1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                 **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   UNITED STATES OF AMERICA,              Case No. 23-cr-01916-BAS-1

                              Plaintiff,    **ORDER:**
12
                                            **(1) DENYING THIRD-PARTY**
13        v.                                **PETITIONER JOSEPH**
                                            **SHAYOTA'S MOTION FOR**
14   ADRIANA ISABEL CAMBEROS,               **A HEARING (ECF No. 317);**
15                             Defendant.    **(2) GRANTING THE UNITED**
                                            **STATES' MOTION TO**
16                                          **DISMISS THIRD-PARTY**
                                            **PETITION (ECF No. 323);**
17                                          **AND**
18
                                            **(3) GRANTING THE UNITED**
19                                          **STATES' MOTION TO**
                                            **STRIKE DEFENDANT'S**
20                                          **RESPONSE IN**
                                            **OPPOSITION (ECF No. 328)**
21

22   **I.    BACKGROUND**

23        This case has a somewhat tortured history.  In 2016, Third-Party Petitioner

24   Joseph Shayota and his wife, Defendant Adriana Camberos, were convicted of

25   conspiracy to traffic in counterfeit goods in connection with their business Tradeway

26   International, doing business as Baja Exporting LLC.  (Presentence Report ("PSR")

27   ¶ 70, ECF No. 221; Declaration of Joseph Shayota ("Shayota Decl."), ECF No. 317,

28   at 3.)  While the case proceeded through the appellate process, Petitioner and

Defendant dissolved their marriage.  In a Post-Marital Agreement entered into between the two in February 2019, the parties agreed "there shall be no community property of their marriage."  (Post-Marital Agmt., Ex. A to United States' Mot. to Dismiss the Petition, at § E.3, ECF No. 323-2.)  Instead, they provide a schedule of their separate properties.  (*Id.*) In addition, the parties agreed:

> By entering into this Agreement, the parties confirm Wife's separate property interest in Tradeway International, Inc. (dba Baja Exporting); . . . and to the extent any community interest may exist in the company at the time this Agreement is executed, . . . the parties agree to transmute any such community interest into Wife's separate property.  As such, any interest in the company shall be the sole and separate property of Wife.  Husband understands he is voluntarily giving up any interest he may have had in the company at this time or in the future . . . .

(*Id.* at § E.5.)

Shayota went to prison from 2019 to 2023.  (Shayota Decl.)  Adriana Camberos went to prison until January 2021, when she received an executive grant of clemency.  (PSR ¶ 70.)  Between 2021 and 2024, Adriana Camberos became involved in the instant conspiracy to commit wire fraud, again involving Baja Exporting.  (ECF No. 75.)

After conviction by a jury, the Court ordered Preliminary Forfeiture on June 30, 2025, including funds from a Wells Fargo Bank Account ending in 8864 in the name of Tradeway Int'l Inc. (dba Baja Exporting), funds from Adriana Shayota's Banco Monex, S.A. account, and funds in other bank accounts.  (ECF No. 297.)  After a contested forfeiture hearing, the Court concluded that the funds in the forfeited bank accounts were "all directly traceable to the proceeds the Camberoses [Adriana and her codefendant brother, Andres] made in the illegal wire fraud scheme."  (ECF No. 305, at 14:15–19.)

Joseph Shayota now files a Third-Party Petition claiming that he has an interest in the following forfeited property:

(1)   $628,095.29 in funds from Wells Fargo Bank Account ending in 8864 in

– 2 –

1    the name of Tradeway Int'l Inc. (dba Baja Exporting);

2      (2)  Community property funds previously deposited in Defendant Adriana

3          Shayota's Banco Monex, S.A. account; and

4      (3)  Any remaining community property funds transferred into any of the

5          remaining bank accounts forfeited in this action.

6 (ECF No. 317.)   Adriana Camberos opposes her ex-husband's Petition.   (ECF

7 No. 325.)  The United States moves to strike Adriana Camberos's Opposition.  (ECF

8 No. 328.)  The United States further moves to dismiss Shayota's Petition.  (ECF No.

9 323), and Shayota opposes (ECF No. 329).

## II.    LEGAL STANDARD

As a preliminary matter, a defendant has no standing to oppose a third party's petition claiming an interest in property already forfeited.  21 U.S.C. § 853(n)(2) (stating any person *other than the defendant* may assert a legal interest); *see also* Fed. R. Crim. P. 32.2 advisory committee's note to 2000 amendment (noting an ancillary hearing has no bearing on the defendant's right to the property); *United States v. Hernandez Escarsega*, 886 F.2d 1560, 1575, 1576  (9th Cir. 1989) ("Hernandez has no standing to complain of any due process violation with regard to a third-party interest.").  Hence, the Court **GRANTS** the Government's motion to strike Adriana Camberos's Opposition to the Petition.  (ECF No. 328.)

Under 21 U.S.C. § 853(n)(2), after forfeiture has been entered, any third party may assert a legal interest in the property that has been forfeited.  However, "[i]f a third party fails to allege in its petition all elements necessary for recovery, including those related to standing, the court may dismiss the petition without providing a hearing." *United States v. White*, 675 F.3d 1073, 1077 (8th Cir. 2012); Fed. R. Crim. P. 32.2(c)(1)(A).  "For purposes of the motion, the facts set forth in the petition are assumed to be true." Fed. R. Crim. P. 32.2(c)(1)(A).

"Standing in forfeiture cases has both constitutional and statutory aspects." *White*, 675 F.3d at 1078 (quoting *United States v. Timley*, 507 F.3d 1125, 1129 (8th

23cr1916

Cir. 2007)). "To establish constitutional standing, 'a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property.'" *Id.* "Statutory standing under § 853(n) requires that [the petitioner] demonstrate a legal interest in the proceeds." *Id.*

"State law determines whether [a] Claimant[] ha[s] a property interest, but Federal law determines whether or not that interest can be forfeited." *United States v. Hooper*, 229 F.3d 818, 820 (9th Cir. 2000). Under federal law, the third party may not relitigate the previous forfeitability finding. Instead, the third party must demonstrate that he falls within two protected categories of transferees under 21 U.S.C. § 853(n)(6). Specifically, a third party may establish rightful ownership of forfeited assets by showing that he is a bona fide purchaser of that property or by showing that his interest in the property antedated the crime. *United States v. 101 Houseco LLC*, 22 F.4th 843, 849 (9th Cir. 2022).

Petitioner in this case does not claim that he is a bona fide purchaser, so the Court focuses on the latter ground. There is a temporal requirement to this ground. *Hooper*, 229 F.3d at 821. The Government's interest in the forfeited property vests at the time the criminal act is committed. *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005). Thus, the petitioner's legal right to the property must have vested before the commission of the acts that gave rise to the forfeiture. *Id.* "Otherwise, a defendant could attempt to avoid criminal forfeiture by transferring his property to another party before conviction." *United States v. Lazarenko*, 476 F.3d 642, 647 (9th Cir. 2007).

Thus, in *Hooper*, the Ninth Circuit found the petitioner's third-party claim must be dismissed because the forfeited property consisted of proceeds from the offense. 229 F.3d 818. Since the defendant's crime "had to have been committed before there could be any proceeds resulting from [it]," the petitioner's legal right to the property could not have antedated the commission of the criminal acts giving rise to the forfeiture. *Id.* at 821. Courts have recognized "that this interpretation of

§ 853(n)(6)(A) leads inevitably to the conclusion that § 853(n)(6)(A) is likely never to apply to proceeds of the crime. Section 853(n)(6)(A) is far better designed to deal with instrumentalities of the crime." *Hooper*, 229 F.3d at 821–22; *see also United States v. Watts*, 786 F.3d 152, 166 (2d Cir. 2015). Generally, "[p]roceeds of a crime . . . do not precede the crime." *Id.*

## III.  ANALYSIS

In this case, Petitioner lacks standing to claim the forfeited proceeds. Furthermore, the Court previously found that the funds in the bank accounts claimed by Petitioner were the proceeds of Adriana Camberos's criminal activity. Therefore, as explained below, the Government's Motion to Dismiss the Petition is **GRANTED**.

### A.  Standing

Petitioner fails to allege facts supporting an ownership interest in the bank accounts. Although he alleges he has a community property interest in the accounts, the Post-Marital Agreement he signed and references in his Petition specifically provided that "there shall be no community property" in the marriage. (Post-Marital Agmt., at § E.3.)

Although neither the Wells Fargo account ending in 8864 in the name of Tradeway Int'l, Inc. (dba Baja Exporting) nor the Banco Monex, S.A. bank account appears on the schedules attached to the Post-Marital Agreement, Petitioner specifically agreed that Tradeway Int'l, Inc. (dba Baja Exporting) was Adriana Camberos's separate property. (*Id.* at § E.5.) Since Petitioner fails to allege facts supporting an ownership interest in the bank accounts or any legal interest in their proceeds, he fails to establish standing.

### B.  No Previous Interest in Criminal Proceeds

This Court previously found that the bank accounts being forfeited consisted of the proceeds of Adriana Camberos's criminal activities. (ECF No. 305, at 14:15–19.) Petitioner may not relitigate this finding. *See 101 Houseco LLC*, 22 F.4th at 845. Since these proceeds could not have existed until the criminal activities were

committed, Petitioner's legal right to the property could not have antedated the criminal activity. *See Hooper*, 229 F.3d at 818.

The case of *United States v. Wilson*, 659 F.3d 947 (9th Cir. 2011), cited by Petitioner, is distinguishable. *Wilson* presented a unique situation recognizing that a Ponzi scheme results in money that is both the proceeds and the instrumentality of the fraud. *Wilson* found that "petitioner's interest, *or a related interest derived from the petitioner's original interest*, must have existed prior to the event that gave rise to the Government's interest." *Id.* at 954 (emphasis original). Thus, the Court allowed for the possibility that one of the victim investors suing to get back money he had just invested unknowingly in the Ponzi scheme may be able to recoup his interest. That situation is vastly different from this one.

Since this case is more akin to *Hooper*, the Court finds Petitioner cannot show that his interest in any money predated the criminal activity in this case. Even assuming all the facts alleged in the Petition are true, Petitioner fails to allege sufficient facts that would support recovery of proceeds of criminal activity.

## IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** Joseph Shayota's Motion for a Hearing (ECF No. 317); **GRANTS** the United States' Motion to Strike Adriana Camberos's Opposition to the Petition (ECF No. 328) and **GRANTS** the United States' Motion to Dismiss the Third-Party Petition. (ECF No. 323.)

**IT IS SO ORDERED.**

DATED: December 11, 2025

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**